1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     TERESA JONES,                                    No.  2:17-cv-00376 JAM CKD

12                    Plaintiff,

13            v.                                          FINDINGS AND RECOMMENDATIONS

14     NANCY A. BERRYHILL, Acting
       Commissioner of Social Security,
15
                      Defendant.
16

17

18            Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19     ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

20     XVI of the Social Security Act ("Act").  For the reasons discussed below, the undersigned will

21     recommend that plaintiff's motion for summary judgment be denied and the Commissioner's

22     cross-motion for summary judgment be granted.

23     BACKGROUND

24            Plaintiff, born May 17, 1953, applied on June 4, 2012 for SSI, alleging disability

25     beginning May 11, 2011.  Administrative Transcript ("AT").  AT 258, 482, 498.  Plaintiff alleged

26     she was unable to work due to arthritis, degenerative disc disease, anxiety, depression, and high

27     blood pressure.  AT 156.  In a decision dated November 19, 2013, the ALJ determined that

28     ////

                                                     1

plaintiff was not disabled.[1]  AT 258-275.  Plaintiff sought review of the decision, and the Appeals

Council remanded it to the ALJ.  AT 311-313.  After conducting a second hearing (AT 114-155),

the ALJ issued a second decision on September 14, 2015, again concluding that plaintiff was not

disabled.  AT 11-28.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social
> Security Act through December 31, 3015.
>
> 2.  It was previously found that the claimant is the unmarried widow
> of the deceased insured worker and has attained the age of 50.
> The claimant met the non-disability requirements for disabled
> widow's benefits set forth in section 202(e) of the Social Security
> Act.
>
> 3.  The prescribed period ended on April 30, 2013.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520,  404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful
> activity?  If so, the claimant is found not disabled.  If not, proceed to
> step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If
> so, proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three:  Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1?  If so, the claimant is automatically determined
> disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past
> work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
burden if the sequential evaluation process proceeds to step five.  Id.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4. The claimant has not engaged in substantial gainful activity since May 11, 2011, the alleged onset date.

5. The claimant has the following severe impairments: lumbar spondylosis; lumbar disc degeneration; osteoarthritis; and sacroilitis.

6.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

7.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except that she cannot bend, stoop, squat, or climb, but can climb stairs.

8.  The claimant is capable of performing past relevant work as a receptionist.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

9. The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2011, through the date of this decision.

AT 15-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly failed to account for mental limitations in the RFC, including limitations in concentration, persistence, and pace; and (2) the ALJ erred in finding plaintiff could perform past relevant work as a receptionist.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

3

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

"The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A.  Mental Limitations

The ALJ's second decision found plaintiff to have severe physical impairments only, and the RFC included physical, but no mental, limitations. AT 20, 21. (In contrast, the ALJ's earlier decision found plaintiff to have the severe impairments of low back pain/strain and depression. AT 261.) Plaintiff argues that, in the second decision at issue here, the ALJ improperly discounted three medical opinions indicating plaintiff had severe mental limitations.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

4

F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In November 2012, treating psychologist Dr. Michael Clarke filled out a medical source statement about plaintiff's mental health. AT 615-619. He stated that plaintiff had been under his care and seen every 1-2 weeks since 2010. AT 615. Dr. Clarke diagnosed plaintiff with Major Depressive Disorder, recurrent (diagnostic code 296.33) and panic disorder with agoraphobia (diagnostic code 300.21), and assigned her a Global Assessment of Functioning (GAF) score of 50-55.[2] AT 615. On the checkbox form provided, Dr. Clarke indicated that plaintiff was seriously limited in: understanding, remembering, and carrying out simple instructions, and making simple work decisions. AT 617. He indicated that she was unable to meet competitive standards in remembering work-like procedures; maintaining attention for two-hour segments; sustaining an ordinary routine without special supervision; and working with others without being unduly distracted. AT 617. In accompanying comments, Dr. Clarke noted that plaintiff's depression, anxiety, and panic attacks "severely limit [her] ability to concentrate and maintain a work schedule." AT 618. He opined that she would miss more than four days of

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

work per month, citing sleep problems as an added difficulty.  AT 619.  In a second medical

source statement issued in February 2015, Dr. Clarke opined that plaintiff was incapable of even

low-stress jobs due to her depression, anxiety, and chronic pain.  AT 928.

Plaintiff also cites State Agency reviewing physician Dr. Randall Garland, who opined in

September 2012 that plaintiff had moderate difficulties in maintaining concentration, persistence

or pace, and mild difficulties in daily living activities and social functioning.  AT 161.  However,

he found her affective disorders non-severe.  AT 161.  Dr. Garland also assessed plaintiff's

mental residual functional capacity, finding her moderately limited in the ability to maintain

attention and concentration for extended periods and to complete a normal workday without long

or frequent breaks.  AT 165.  In conclusion, Dr. Garland found plaintiff capable of performing

unskilled work, "including the abilities to understand, carry out, and remember simple

instructions" and other tasks associated with such work.  AT 166.

Third, plaintiff cites State Agency reviewing psychologist Dr. Timothy Schumacher, who

reviewed plaintiff's records in April 2013.  AT 208.  Dr. Schumacher rejected Dr. Clarke's

November 2012 opinion "of severe mental-vocational restrictions," stating: "No formal mental

status findings are presented to support this opinion and it is inconsistent with her functional

report which indicates that most of her restrictions are physical and that she can still care for

herself independently, go out alone, drive, shop, manage her money, and engage in routine

contacts with others."  AT 208; see AT 558-568 (plaintiff's reported daily activities in 2012

included preparing meals, doing housework and laundry, paying bills and completing paperwork,

going to doctor's appointments, caring for chronically ill roommate, shopping for groceries twice

a week, and driving).  Like Dr. Garland, Dr. Schumacher found plaintiff moderately limited in

concentration, persistence, and pace, and able to do unskilled work.  AT 213-214.

The ALJ found that none of plaintiff's impairments "represents, either singly or in

combination, more than a minimal limitation in the ability to perform basic work activities."  AT

15.  While noting "references in the record to mental impairments, variously diagnosed as

depression, anxiety disorder, panic disorder," and substance-related issues, the ALJ concluded

that, after a complete review of the record and plaintiff's testimony, there was no evidence that

6

plaintiff had any work-related functional limitations from these impairments, "provided that she

follows treatment as prescribed." AT 16.

The ALJ noted the November 2012 medical source statement and other opinions by Dr.

Clarke. AT 17. Although Dr. Clarke was plaintiff's treating physician, the ALJ gave his

opinions "little weight for the following reasons":

> [T]he medical source statement is internally inconsistent and illogical in that it references a greater ability to perform complex tasks than simple tasks[3]; it is a checkbox-style form without narrative explanation other than listing the claimant's diagnoses and alleged systems; although Dr. Clarke's records are unavailable, these extreme limitations are not consistent with reported symptoms and observations in treatment notes from other providers[4] . . . [.] It is unclear what the diagnosis of panic disorder with agoraphobia is based upon, since the available treatment notes do not reference the occurrence of panic attacks, and the claimant did not report any panic attacks or fear of leaving her home in her testimony or function report. Furthermore, Dr. Clarke's checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for these conclusions. The undersigned finds this evidence has little probative value because it is not supported by objective evidence.

AT 19.

Based on the above, the ALJ provided specific and legitimate reasons for discounting Dr.

Clarke's opinions as to plaintiff's work-related mental limitations. The ALJ found the checkbox

forms conclusory and unsupported by evidence in the record, see Molina v. Astrue, 674 F.3d

1104, 1111-1112 (9th Cir. 2012), and there was substantial evidence that her mental symptoms

were well-controlled by medication. See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006)

---

[3] See AT 616-17.

[4] Earlier, the ALJ cited evidence indicating that plaintiff's mental health symptoms were adequately controlled by medication. AT 17; see, e.g., AT 824, 831 (noting Cymbalta helped with symptoms), 854 (noting plaintiff stable on Lorazepam). "At multiple visits throughout 2013-2015, the claimant's mood and affect were normal and she was continued on her medication regimen," the ALJ wrote. AT 17; see, e.g., AT 846, 897, 901, 1000, 1003. When she was taking her medication, the ALJ wrote, her limitations in performing work-related activity appeared minimal. AT 17. At other times, plaintiff failed to take her medications and/or they were discontinued. AT 17; see AT 994. Plaintiff's prescribing physician, Dr. Munish Lal, noted multiple times that her prescribed psychotropic medications were effective. See, e.g., AT 933, 940, 948.

("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ also noted internal inconsistencies in Dr. Clarke's report. See Morgan v. Comm'r, 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies in medical opinion may be relevant factor in ALJ's weighing of opinion).

Turning to the State Agency physicians' opinions, the ALJ wrote:

> The State Agency psychological consultants also offered opinions as to the severity of the claimant's mental impairments. At the initial level, the consultant opined that the claimant's affective disorder was non-severe, and that she only had mild restrictions in activities of daily living[,] maintaining social functioning and no history of repeated episodes of decompensation. However, this consultant found moderate limitations in concentration, persistence, or pace, which conflicts with the finding that the affective disorder is non-severe (Exhibit 3A/6-7).[5] The reconsideration consultant found that the affective disorder was severe, and also found moderate limitation in concentration, persistence, or pace (Exhibit 9A/9)[6]. These opinions are given little weight, as they are from non-examining sources, are not supported by objective findings concerning the claimant's ability to maintain concentration and task persistence, and appear to rely at least in part on the opinion of Dr. Clarke, which is given little weight in this decision.

AT 20. As with Dr. Clarke, the ALJ cited a lack of objective findings to support these non-examining opinions. Based on the ALJ's review of the mental health evidence – including numerous normal mental status examinations, evidence that plaintiff's depression and anxiety were eased by medication, and plaintiff's ability to engage in a wide range of daily activities – the undersigned finds no error in the ALJ's discounting the non-examining physicians' findings that plaintiff had moderate limitations in concentration, persistence, or pace.

B. Past Relevant Work

Plaintiff next claims that the ALJ erred by finding that she could perform past relevant work ("PRW") as a receptionist. See Sanchez v. Secretary of HHS, 812 F.2d 509, 511 (9th Cir. 1987) (plaintiff not disabled if he or she can perform past work as performed in national economy).

---

[5] AT 189-190 (Dr. Garland's opinion).

[6] AT 243 (Dr. Schumacher's opinion).

8

1    The plaintiff had previously held a variety of jobs, including general clerk, caregiver,

2    receptionist, waitress, and dental assistant.  AT 27.  At the September 2013 hearing, the

3    vocational expert ("VE") testified that the Dictionary of Occupational Titles ("DOT") code for

4    plaintiff's past work of receptionist was 237.367-038.  AT 27, 105.  At the June 2015 hearing, the

5    VE testified that a person with plaintiff's RFC could perform her past work as a receptionist.  AT

6    27, 151-152.  "The testimony of the vocational expert is consistent with the DOT, and the

7    undersigned accepts it," the ALJ wrote, finding that plaintiff could perform PRW.  AT 27.

8        Plaintiff argues that her past work as a dental receptionist was a "composite job" that

9    included different duties than the DOT definition of receptionist, barring the ALJ from finding

10   she could perform receptionist work as it was generally performed in the economy.  See AT 27-

11   28.

12       Any error as to the receptionist job was harmless, however, as the VE testified that

13   plaintiff could perform other jobs, even if her RFC included limitations as to concentration,

14   persistence and pace.  AT 152-153.  Factoring in such limitations (which ultimately did not make

15   it into the RFC), the VE stated that plaintiff could not perform past work, but could perform

16   "sedentary, non-public, unskilled, non-quota type jobs" such as addressing clerk, final assembler,

17   and laminator.  AT 153.  See 20 C.F.R. § 404.1566(b) (providing that "[w]ork exists in the

18   national economy when there is a significant number of jobs (in one or more occupations) having

19   requirements which you are able to meet") (emphasis added).  See also Thomas v. Comm'r, 480

20   F3d. Appx. 462, 464 (9th Cir. 2012) (affirming ALJ even though claimant could not perform two

21   identified jobs because she could perform the remaining job of housekeeper, which existed in

22   significant numbers in the national economy).  Thus the undersigned finds no reason to remand

23   on this basis.

24   ////

25   ////

26   ////

27   ////

28   ////

9

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 7, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/jones0376.ssi.ckd_fr

10